UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZARCONIA SHELTON,

    Plaintiff,

v.

AMERICREDIT FINANCIAL
SERVICES, INC.,

    Defendant.

Case No. 23-10543
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING PLAINTIFF'S APPLICATION TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE [3] AND SUMMARILY DISMISSING COMPLAINT [1]**

---

Zarconia Shelton sues AmeriCredit Financial Services for violations of the Fair Credit Reporting Act. (*See* ECF No. 1.) She alleges that AmeriCredit is reporting inaccurate information to Transunion about a vehicle loan that was "charged off" in early 2022. (ECF No. 1, PageID.3.) Shelton says that she has been "completely frustrated" trying to obtain a new vehicle because the inaccurate information on her credit report "has been getting her denied."[1] (*Id.* at PageID.4.)

For the reasons explained below, the Court finds that Shelton failed to show that any of the information in her credit report is false or misleading. Accordingly, it will dismiss the complaint without prejudice.

---

[1] The Court assumes without deciding that Shelton's alleged inability to obtain a new vehicle gives her standing to bring this suit. *See Krueger v. Experian Info. Sols., Inc.*, No. 20-2060, 2021 WL 4145565, at *2 (6th Cir. Sept. 13, 2021) (finding standing where plaintiff alleged that inaccurate credit reports "inflicted a concrete harm because his low credit score caused him to abandon his plans to buy a new car").

I.

Along with her complaint, Shelton filed an application to proceed without prepayment of fees or costs. (ECF No. 3.) Under 28 U.S.C. § 1915(a)(1), the Court may authorize commencement of an action without prepayment of fees and costs if the plaintiff demonstrates that they cannot pay such fees. Shelton states that she is unemployed, is responsible for two dependents, and has very limited means. (*Id.*) The Court finds that she is thus entitled to proceed in forma pauperis and grants her application to proceed without prepayment of the filing fee and costs. *See* 28 U.S.C. § 1915(a)(1).

II.

When a Court grants an application under 28 U.S.C. § 1915, it has an additional responsibility: screen the complaint and decide whether it "is frivolous or malicious" or "fails to state a claim on which relief may be granted." *See* 28 U.S.C. § 1915(e)(2)(B); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997).

In deciding whether a complaint states a claim upon which relief may be granted, the Court must determine whether it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but they must "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). What is plausible is

2

"a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

And although a pro se litigant's complaint is to be construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), that leniency is "not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). The "basic pleading requirements 'apply to self-represented and counseled plaintiffs alike.'" *Williams v. Hall*, No. 21-5540, 2022 WL 2966395, at *2 (6th Cir. July 27, 2022) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)). In other words, pro se complaints "still must plead facts sufficient to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11454, 2011 WL 1233200, at *3 (E.D. Mich. 2011).

### III.

The Fair Credit Reporting Act is designed to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Boggio v. USAA Federal Sav. Bank*, 696 F.3d 611, 614 (6th Cir. 2012) (quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007)). Among other things, the FCRA imposes a "duty on furnishers of credit information to provide accurate information about their customers" to credit reporting agencies. *Chandler v. Peoples Bank & Tr. Co. of Hazard*, 769 F. App'x 242, 247–48 (6th Cir. 2019). In particular, furnishers of information are required to "provide complete and accurate information" to credit reporting agencies and to take certain investigatory and curative steps "upon notice of a dispute." *See Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018).

3

But before such duties are imposed, a plaintiff must make a "threshold showing of inaccuracy[.]" *Pittman*, 901 F.3d at 628. To do so, she may allege that the report was either "patently incorrect" or "misleading in such a way and to such an extent that it [could have been] expected to have an adverse effect [on the consumer]." *See Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 942–43 (6th Cir. 2020) (noting that same standard applied to 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681s-2(b)). And "courts assess the alleged inaccuracy in the context of the report as a whole." *Settles v. Trans Union, LLC*, No. 3:20-00084, 2020 WL 6900302, at *4 (M.D. Tenn. Nov. 24, 2020) (collecting cases).

Shelton acknowledges that she stopped making payments on the vehicle loan in October 2021, and she acknowledges that her vehicle was repossessed and then sold at auction in February 2022. (ECF No. 1.) AmeriCredit's report looks like this:



4

(*Id.* at PageID.6 (annotations in original).)

Shelton makes four objections to this report. First, she says that her credit report shows no payment received for February 2022, when in fact AmeriCredit received over $5,000 from the proceeds of the auction of her vehicle that month. (ECF No. 1, PageID.3.) Second, she says the original charge-off amount is listed at about $22,000, when it should be about $17,000 after deducting the proceeds of the auction. (*Id.*) Third, she says that the "many charge-offs" on the account make it "confusing as to when the account was charged off." (*Id.*) And finally, she says that "there was no payment received for October," but the "defendant furnished the account as okay in October." (*Id.*)

Shelton failed to adequately explain why any of this information is false or misleading.

Start with the first and second objections. Both assume that Shelton should receive credit on the loan from the proceeds of the auction. Essentially, she believes that the proceeds should count as a payment she made to AmeriCredit which, in turn, should reduce the total amount charged off. Shelton provides no factual or legal support for that assumption.

And Michigan law cuts against it. Michigan's Uniform Commercial Code "generally governs the laws of commercial transactions, and Article 9 governs secured transactions." *See Dow Chem. Employees' Credit Union v. Geiling*, No. 337117, 2018 WL 2746331, at *12 (Mich. Ct. App. June 7, 2018). While Shelton did not provide any loan documents from her transaction with AmeriCredit, they are an essential part of

the complaint and the Court assumes that the contract is a secured transaction under the UCC.[2] *See, e.g., id.* (applying UCC to boat and vehicle loan); *McGee v. Michael Andrews & Assocs.*, No. 18-13231, 2019 WL 2539344, at *3 (E.D. Mich. June 20, 2019) (applying UCC to vehicle loan); *In re Pizzano*, 439 B.R. 445, 450 (Bankr. W.D. Mich. 2010) (same); *Gillom v. Ralph Thayer Auto. Livonia, Inc.*, 444 F. Supp. 2d 763, 764 (E.D. Mich. 2006) (same).

Under the UCC, the loan was likely a "security agreement" between Shelton and AmeriCredit. *See* Mich. Comp. Laws §§ 440.9102(ttt). To oversimplify a bit, this means that AmeriCredit gave Shelton a loan and possession of the vehicle in exchange for her promise to make regular payments on the loan. §§ 440.9102(fff), (sss). But to guard against the risk that Shelton would default on the loan, the agreement made the vehicle "collateral," meaning that AmeriCredit retained a "security interest" in it. § 440.9102(l). That security interest gave AmeriCredit the right to "take possession of the collateral" if Shelton defaulted on the loan. *See* Mich. Comp. Laws § 440.9609(1)(a)). Once it did that, it could sell the collateral and use the proceeds to satisfy the loan. *See* Mich. Comp. Laws §§ 440.9610(1), 440.9615(1)(b). Put differently, following Shelton's default, the security agreement gave AmeriCredit

---

[2] Beyond the application of the UCC in like circumstances, the series of events here suggests that the contract was a secured transaction. And, notably, Shelton makes no allegations that AmeriCredit violated the contract by repossessing and selling the vehicle at auction. In any case, as will be explained in more detail below, the Court will permit Shelton to file an amended complaint if she believes and can plead in good faith that her contract is not controlled by the UCC.

the legal right to repossess the vehicle, sell it, and apply the proceeds to the outstanding loan balance.

Because AmeriCredit was legally entitled to the proceeds of the auction after Shelton defaulted, it is not clear why Shelton should receive credit against the loan for those funds.[3] It follows that there was nothing false or misleading about its report to TransUnion in this respect.

Shelton's third objection is that the report listed the account as charged off for several months, which allegedly "makes it confusing as to when the account was charged off." (ECF No. 1, PageID.3.)

A very similar argument has been rejected by another court in this District. *See Shaw v. Equifax Info. Sols., Inc.*, 204 F. Supp. 3d 956 (E.D. Mich. 2016). There, the plaintiff claimed that her lender "inaccurately reported that the account was charged off on multiple occasions over a 7–8 month period." *Id.* at 961. But after explaining that the FCRA allows charged-off accounts to be reported for seven years, the Court dismissed her claim. *Id.* at 960 (citing 15 U.S.C. § 1681c(a)(4)). It explained that the report showed, "nearly three years of 'on-time' payments, to delinquent payments, to being in default, to having the account charged off, all of which are indisputably accurate." *Id.* And it concluded that because "the account can continue to record [as charged off] until April 2018, it is clear to the industry that the charge-off began to run in April 2011 (seven years earlier)." *Id.* at 961. Thus, in the full

---

[3] Despite not crediting Shelton with the proceeds of the auction, AmeriCredit did deduct that amount from the total "past due," so Shelton is not responsible for paying that money back.

7

context of the report, "there [was] nothing to indicate, as Plaintiff intimates, that anyone would believe there has been more than one charge off[.]" *Id.*

The same result follows here. The report shows several years of account history, none of which Shelton has plausibly pled are inaccurate. (ECF No. 1.) And, similar to *Shaw*, it says that the "estimated month and year that this item will be removed" is October 2028, seven years from the date of default. *See Shaw*, 204 F. Supp. 3d 961. In other words, the report accurately reflects the account history: it entered default in October 2021, was charged off in March 2022, and will stop reporting in October 2028. So there is nothing to suggest that the multiple charge-offs listed in the report are misleading. *Id.* And even if Shelton was confused, a "consumer's conclusory allegation that a report is misleading is insufficient to meet [the] standard delineated by the Sixth Circuit." *See Thompson v. Equifax Info. Servs., LLC*, 441 F. Supp. 3d 533, 548 (E.D. Mich. 2020).

That leaves the final objection. In a single sentence, Shelton says "[t]here was no payment received for October [2021], however the defendant furnished the account as OK in October." (ECF No. 1, PageID.3.) True. But the November 2021 payment status was listed as "30," meaning the account was 30 days late. And, as explained, the estimated date of removal also indicates that there was no payment in October 2021. So the full report accurately reflects the information that Shelton claims is false.

In sum, Shelton failed to plausibly plead that any of the "inaccuracies" in her credit report are false or misleading.

8

## IV.

Even with the benefit of liberal construction, Shelton's allegations are insufficient to state a claim for relief. Accordingly, the Court GRANTS her motion to proceed in forma pauperis (ECF No. 3) and DISMISSES her complaint (ECF No. 1) without prejudice.

However, as indicated above, the Court will permit Shelton to file an amended complaint if she believes that her contract with AmeriCredit is not governed by Article 9 of the Uniform Commercial Code. If so, she must file by April 28, 2023. The amended complaint should either include the relevant loan documents or explain why Article 9 does not apply. The failure to file an amended complaint by that date will result in this case being dismissed.

SO ORDERED.

Dated: April 3, 2023

                                              s/Laurie J. Michelson
                                              LAURIE J. MICHELSON
                                              UNITED STATES DISTRICT JUDGE